UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NOLAN HALL,

        Petitioner,

                             Case No. 1:07-cv-239
v.                                Hon. Robert J. Jonker

THOMAS K. BELL,

        Respondent.

_____/


### REPORT AND RECOMMENDATION

        Petitioner, Nolan Hall, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

### I.      Background

        This case arises from the March 6, 1982 shooting death of Philbert Galliard.[2]  The Michigan Court of Appeals summarized the underlying facts as follows:

> At trial, no forensic evidence was presented to tie defendant to Galliard's murder.  Evidence established, though, that defendant was the last person with Galliard before his murder.  The prosecution also presented defendant's admissions to his brother, niece and former girlfriend that he killed Galliard.  Defendant denied making any such statements.  Defendant testified that he was giving Galliard a ride home on the morning of the murder when Galliard asked defendant to flag down a car that Galliard recognized.  Defendant further testified that there were two male occupants whom defendant did not know in the car.  Defendant testified that Galliard decided to travel with the two unidentified men.

*People v. Nolan Hall*, No. 253627, slip op. at 1 (Mich. App. Nov. 29, 2005) (docket no. 30).

_____

[1] In the trial transcripts, petitioner is sometimes referred to as "Dino."

[2] The victim's surname appears in the record as both "Galliard" and "Gaillard."  The court will refer to the victim by the name "Galliard," the spelling used in the appellate opinion.

Following a jury trial in 2003, petitioner was convicted of second-degree murder, M.C.L. § 750.317, and sentenced as a fourth habitual offender to 40 to 60 years imprisonment. *Id.*

Petitioner, through counsel, presented six issues on appeal:

I. Did the government violate [petitioner's] due process right to a fair trial by bringing him to trial twenty-one years after the date of the charged offense, resulting in significant memory lapses and a loss of witnesses and records which hindered his ability to effectively cross-examine witnesses and present a defense. US Const Am VI, XIV?

II. Was [petitioner] denied a fair trial where the trial court denied his motion for a mistrial, after the prosecutor argued in closing argument that [petitioner's] prior arrest on a federal gun charge was relevant to his credibility?

III. Was [petitioner] denied his constitutional right to present a defense where the trial court excluded hearsay statements made by the deceased cab driver to the police which were critical to his defense?

IV. Does due process require that the court vacate [petitioner's] habitual offender "conviction" and sentence and remand for resentencing where the prosecutor never filed an information or supplemental information <u>charging</u> [petitioner] as an habitual offender, where [petitioner] was never convicted of being a habitual offender in a separate proceeding, as required by the statute in effect at the time of the charged offense, and where the notice of enhancement was for a fourth felony offender, where [petitioner] only had one prior conviction at the time of the instant offense in 1982?

V. Was [petitioner] denied the effective assistance of counsel by counsel's failure to object to the habitual offender charge and sentence, and by defense counsel's decision to send substitute counsel to sentencing?

VI. Is [petitioner] entitled to resentencing where the trial judge abused his discretion by imposing a 40-year minimum sentence for second-degree murder?

Brief on Appeal (docket no. 30) (emphasis in original).

Petitioner also filed a "supplemental brief on appeal" raising the following issue:

[VII.] Was [petitioner] denied the effective assistance of counsel by [counsel's] failure to call defense witnesses to trial and [counsel's] failure to interview defense witnesses?

Supplemental Brief (docket no. 30).[3]

The Michigan Court of Appeals affirmed petitioner's second-degree murder conviction, but remanded for resentencing because he was not properly convicted of the habitual fourth offender charge, M.C.L. § 769.13. *People v. Nolan Hall*, No. 253627, slip op. at 6.

Petitioner, through counsel, raised Issues I, II , III and VII in his application for leave to appeal to the Michigan Supreme Court, which that court denied. *See People v.Nolan Hall*, No. 130365 (Mich. June 26, 2006) (docket no. 31).

On March 23, 2006, while petitioner's application for leave to appeal to the Michigan Supreme Court was pending, the trial court resentenced him to a term of 32 to 50 years imprisonment. *See* Judgment of sentence (docket no. 32). Petitioner, through counsel, appealed the resentencing to the Michigan Court of Appeals, raising two issues:

[VIII.] Is [petitioner] entitled to resentencing where the trial judge did not resolve whether the judicial sentencing guidelines applied at resentencing, did not score a sentencing information report, and did not indicate that he was departing from the judicial sentencing guidelines' range articulated by defense counsel?

[IX.] Is [petitioner] entitled to resentencing where the trial judge abused his discretion by imposing a 32-year minimum sentence, which is a departure from the minimum sentencing range of the judicial sentencing guidelines, and is disproportionately severe?

---

[3] For purposes of this report, the court will refer to the new claim as "Issue VII."

Brief on appeal (docket no. 32).[4] The Michigan Court of Appeals affirmed the resentencing on August 9, 2007. *People v. Nolan Hall*, No. 269990 (Mich. App. Aug. 9, 2007) (docket no. 32). Petitioner raised the same two issues in his application for leave to appeal to the Michigan Supreme Court, which denied the application. *People v. Nolan Hall*, No. 134910 (Mich. Jan. 8, 2008).

On March 12, 2007, while petitioner's second appeal was pending, he filed the present habeas action. *See* Petition (docket no. 1). He subsequently filed an amended habeas petition[5] raising four issues (in his words):

I.     Petitioner's conviction is the direct result of being denied a fair trial when he was deprived of a defense by the loss of evidence and witnesses memories.

II.     Petitioner's conviction is the direct result of being denied a fair trial by the court's denial of his motion for mistrial for the prosecutor arguing guilt for a gun charge.

III.     Petitioner's conviction is the direct result of being denied a fair trial by the court's denial of petitioner's opportunity to present a defense by excluding evidence of the cabby.

IV.     Petitioner's conviction is the direct result of being denied effective assistance of counsel due to counsel's failure to call and interview defense witnesses.

Amended Petition (docket no. 3).

### III.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant

---

[4] For purposes of this report, the court will refer to these additional grounds raised in the Michigan Court of Appeals as Issues VIII and IX.

[5] The original petition was not filed on the form provided by the court as required by Rule 2(d), Rules Governing Section 2254 Cases in the United States District Courts and W.D. Mich. LCivR 5.6(a). For this reason, the court directed petitioner to file an amended petition in the proper form. *See* docket no. 2.

to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle

from the Supreme Court but unreasonably applied the principle to the facts of the case before it."
*Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV. Petitioner's habeas claims

### A. Denial of a fair trial due to delay in prosecution

The Michigan Court of Appeals rejected petitioner's claim that he was denied a fair trial due to the delay in prosecuting this case, reasoning as follows:

A challenge to the length of prearrest delay implicates constitutional due process rights that this Court reviews de novo. *People v. Cain*, 238 Mich. App 95, 108; 605 NW2d 28 (1999). To warrant reversal of defendant's conviction, the prearrest delay must have resulted in actual and substantial prejudice to his right to a fair trial and the prosecution must have intended to gain a tactical advantage as a result of the delay. *People v. Crear*, 242 Mich. App 158, 166; 618 NW2d 91 (2000). To constitute actual and substantial prejudice, the prearrest delay must have meaningfully impaired defendant's ability to defend himself from the charges against him such that the outcome of his trial likely was affected. *Id.* An unsupported statement of prejudice by defense counsel is not enough to establish actual and substantial prejudice. *People v. Williams*, 114 Mich. App 186, 202; 318 NW2d 671 (1982), [sic] nor are vague claims of a loss of physical evidence or witness memory, or of the death of witnesses. *Crear*, *supra* at 166; *People v. Adams*, 232 Mich. App 128, 137-138; 591 NW2d 44 (1998); *People v. Loyer*, 169 Mich.App 105, 119; 425 NW2d 714 (1988).

If a defendant establishes actual and substantial prejudice, the prosecution then bears the burden of establishing that the reason for the delay was sufficient to justify that prejudice. *People v. Herndon*, 246 Mich. App 371, 390; 633 NW2d 376 (2001). "In evaluating the reason for the delay, the court may consider the

explanation for the delay, whether the delay was deliberate or done with intent to gain a tactical advantage, and whether undue prejudice attached to the defendant." *Id.* The need for further investigation is a proper reason for delay, and the prosecution is not required to proceed with a case before it has sufficient evidence to convict. *United States v. Lovasco*, 431 U.S. 783, 790; 97 S Ct 2044; 52 L.Ed.2d 752 (1977); *Adams, supra* at 134, 140.

Defendant argues that he was denied his right to a fair trial by the prosecution's approximate 20-year delay in arresting and charging him with Galliard's murder. Defendant asserts that his defense was prejudiced by a loss of physical evidence, as well as by the lost or false memories of witnesses. More specifically, defendant claims that his defense was hindered by the inability to determine to whom a license plate, an imprint of which was present in a snow bank near Galliard's body, was registered in 1982, and by the loss of two cigarette butts - and the DNA on them - collected at the scene.

Testimony at trial indicated that the license plate imprint could not have been made contemporaneous with Galliard's murder, because any vehicle leaving the imprint would have had to drive over Galliard's body as it left the scene, and that there was no indication whatsoever that Galliard's body had been driven over. Further, the cigarette butts were examined for their evidentiary value and DNA tests were conducted on them before they were lost. Defendant does not indicate how the absence of the butts themselves, their evidentiary value already examined and preserved, hindered his defense.

As for the impact of the delay on witness testimony, defendant does not specify what details each witness had difficulty remembering, nor how the absence of any such details hindered his defense. Three prosecution witnesses testified unequivocally that defendant told them that he committed the instant murder and each was subject to rigorous cross-examination. Defendant seems to assert essentially that each changed his or her story over time to the detriment of defendant in order to serve other purposes, and not from memory loss prejudicial to the defense. Here, as in *Cain, supra* at 109:

> [defendant's] argument with respect to prejudice is simply too speculative to justify reversing [his] conviction. Although testimony at trial indicated that some witnesses could not give [specific information about what] they remembered, [defendant] has not suggested how this slight memory failure worked to [his] disadvantage or why [that information was] critical to [his] defense. In essence, without allegations that these witnesses forgot specific evidence helpful to [defendant's] defense, we cannot conclude that the absence of the evidence was prejudicial.

Defendant also points to the death of the cab driver who picked him up from his mother's house and took him to his girlfriend's house within a half hour of Galliard's murder as significantly hindering his defense. However, given that there is no indication that the cab driver would have testified in a manner helpful to defendant's defense, defendant has not established that the prearrest delay resulted in actual and substantial prejudice, which likely affected the outcome of his trial.

Even if defendant could establish that he was hindered by the delay, the trial court properly concluded that the delay was explainable by the prosecution's need for additional investigation. As noted above, the prosecution is not required to proceed with a case before it has sufficient evidence to convict. *Adams*, *supra* at 134, 140; *Lovasco*, *supra*, at 790. There is nothing in the record to indicate that the pre-arrest delay in this case was intended to gain a tactical advantage for the prosecution; rather the delay in arresting defendant stemmed from 'investigative rather than tactical concerns' and did not deprive defendant of his due process right to a fair trial. *Adams*, *supra* at 144.

*People v. Nolan Hall*, No. 253627, slip op. at pp. 1-3.

The Michigan Court of Appeals properly applied federal law as expressed in *United States v. Lovasco*, 431 U.S. 783. It is well established that "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee, against bringing overly stale criminal charges." *Lovasco*, 431 U.S. at 789 (internal quotation marks omitted). However, the Supreme Court has acknowledged that the statute of limitations does not fully define defendants' rights with respect to events occurring prior to indictment, and "that the Due Process Clause has a limited role to play in protecting against oppressive delay." *Id.*

The Sixth Circuit has consistently read *Lovasco* to hold that "[d]ismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial and [2] that the delay was an intentional device by the government to gain a tactical advantage." *United States v. Brown*, 959 F.2d 63, 66 (6th Cir.1992) (quoting *United States v. Brown*, 667 F.2d 566, 568 (6th Cir.1982)). In other words, the Court must consider both the prejudice to the defendant and the reasons for the delay. *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir.1986).

*United States v. Avila*, 410 F. Supp.2d 626, 627 (W.D. Mich. 2005).

This court agrees with the Michigan Court of Appeals' resolution of petitioner's claims of prejudice. As that court observed, nothing in the record suggests that the government delayed prosecution of petitioner to obtain a tactical advantage. Rather, this prosecution arose from an investigation by the Calhoun County Cold Case Team some twenty years after the murder. *See, e.g.*, Trial Trans. V at 916-49 (testimony of Det. Sgt. Bright) and Trial Trans. V at 949-88 (testimony of Det. Barbara Walters). "Law enforcement officials are entitled to buttress their cases with additional evidence, and the courts will not usurp the prosecutor's role in deciding when a particular case is strong enough to seek an indictment." *United States v. Lacey*, 86 F.3d 956, 965 (10th Cir. 1996). *See also*, *United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995) ("since the government bears the burden of proving its case beyond a reasonable doubt, it must be permitted to exercise its own judgment in determining at what point in an investigation enough evidence has been obtained"). Here, authorities did not have the incriminating testimony of defendant's niece, that defendant told her he committed a murder, at the time of the original investigation.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

**B.      The trial court's failure to grant mistrial and prosecutorial misconduct**

Petitioner contends that he is entitled to habeas relief because the trial court denied a motion for a mistrial arising from the prosecutor's comments during closing argument regarding petitioner's guilt on an unrelated weapons charge. The prosecutor's comments were based upon the testimony of petitioner's niece, Angela Hawkins. In March 1982, shortly after the murder, petitioner

told his niece, that he "did something bad" and had to "leave for a while." Trial Trans. 4 at 766, 779. Petitioner told Ms. Hawkins that he had "murdered someone," that it was a secret and that she "could never tell anyone." *Id.* at 767. Petitioner drove Ms. Hawkins to a parking lot and pointed out the crime scene, telling Ms. Hawkins "[t]here's blood right there." *Id.* at 769. Ms. Hawkins looked and saw blood on the ground. *Id.* at 770. At the time, she was 12 years old and frightened by the blood and murder. *Id.* She had never been frightened of petitioner before that time. *Id.* at 770-71. Ms. Hawkins testified that petitioner left for Arizona sometime after their conversation. *Id.* at 771.

Ms. Hawkins had only one other discussion with petitioner about the murder, and that occurred in August 2002. *Id.* at 773-74. She was alone with petitioner at the time, when he told her that the murder "had been haunting him." *Id.* at 773-74. After this conversation, an incident occurred which caused Ms. Hawkins to report petitioner's admissions to the police. *Id.* at 775. She was in a car with petitioner, when they were pulled over by the Battle Creek Police. *Id.* The police searched the car and found a gun, which belonged to petitioner. *Id.* at 775-76. After Ms. Hawkins told the police that the gun belonged to petitioner, the officers took both her and petitioner into custody. *Id.* at 777. Ms. Hawkins was "pretty upset" and "angry" with petitioner, because he had placed the gun under her seat and in her words "was trying to put the gun charge on me." *Id.* at 777-78.

Later that year, Ms. Hawkins was in custody in Charlotte, Michigan, after being arrested for writing a bad check. *Id.* at 778-79. At some point, she spoke with Detective Barbara Walters of the Battle Creek Police Department. *Id.* at 779. Ms. Hawkins testified at trial regarding this conversation and the surrounding circumstances:

Q.      Was it in that conversation that you had with Barb Walters that you told her about what your uncle told you that morning in March of 1982?

A.      Yes.

Q.      Have you been promised anything in exchange for your testimony in this case?

A.      No.

Q.      Were you ever charged in that gun case?

A.      No.

Q.      Were any charges to your knowledge ever brought and then dismissed related to that gun case?

A.      No.

Q.      Has there been any sort of agreement reached between you and the police department or between you and the prosecutor's office or between you and anyone in exchange for your testimony today?

A.      No.

Q.      Why are you testifying?

A.      Because I feel it's the right thing to do.

Q.      He's your uncle.

A.      I know.

Q.      Why are you testifying against your uncle?

A.      Because it's the right thing to do.

Q.      Do you love your uncle?

A.      Of course I do.

Q.      Even testifying against him?

A.      Yes, I do.

Q.      Has it been difficult for you to testify against your uncle as it relates to how other family members now treat you?

[Objection omitted.]

A.      Most definitely.

[Objection omitted.]

Q.      It most definitely has?

A.      Most definitely.

Q.      And yet you're still testifying?

A.      Yes, I am.

Trial Trans. IV at 779-81.

During closing argument, the prosecutor referred to Ms. Hawkins' testimony:

Angela Hawkins got nothing.  She got nothing in exchange for testifying against [petitioner] in federal court on those gun charges, the same gun charges, by the way, that you can use to decide the credibility of this individual right here -

Trial Trans. at 1212-13.[6]  Petitioner's counsel objected to this argument, stating "[i]t's not in

evidence."  *Id.* at 1213.  The court deferred ruling on the objection.  *Id.*  After closing argument,

petitioner's counsel moved for a mistrial based upon the prosecutor's reference to the federal "gun

charge":

Your Honor, [the prosecutor] made reference to a gun charge in federal court and said that they could use that charge in deciding whether [petitioner] was guilty or not of killing Mr. Gaillard and I object to that, I objected at the time but I feel that it is a gross mischaracterization of what the federal matter involved.  There was no conviction based upon that arrest and at this point I think it's extremely damaging and prejudicial and I would ask the Court to declare a mistrial because of it.

---

[6]Testimony is contained in a supplemental Rule 5 transcript being filed by the Michigan Attorney General.

*Id.* at 1278-79.

        The prosecutor responded as follows:

        You Honor, my recollection of my closing, arguing the statements that I made was that there was a charge, not a conviction, that the jurors could use the charge as we had discussed and the circumstances surrounding that charge to make a determination of credibility.

        I did not argue that that charge or anything associated with the charge was substantive in nature, nor did I argue that, you know, this offense or the surrounding circumstances made it more likely that this defendant did this particular offense so I did not argue that, you know, there was some, you know, kind of predilection towards committing, you know, criminal offenses because of that and I think my closing statements were appropriate. They were based on the jury instruction that [petitioner's counsel] requested and I would ask the Court to deny the motion.

*Id.* at 1279-80. The trial judge denied the motion, after observing that evidence came out in front of the jury that a gun was found in the car with petitioner and the witness, and that a curative instruction was given advising the jury that they could consider petitioner's other improper acts only as it related to his credibility. *Id.* at 1264, 1280.[7]

---

[7] The court gave the following instruction:

        You've heard evidence that was introduced to show that [petitioner] may have committed other improper acts for which he's not on trial. If you believe this evidence, you must be very careful only to consider it for certain purposes. Now, you may only think about this evidence as it relates to the credibility or believability of witnesses. You must not consider this evidence for any other purpose. For example, you must not decide that it shows that [petitioner] is a bad person or that he's likely to commit crimes. You must not convict [petitioner] here because you think he's guilty of some other bad conduct or bad acts. All of the evidence must convince you beyond a reasonable doubt that [petitioner] committed the alleged crime or you must find him not guilty.

Trial Trans. VI at 1264.

1. **State court's order denying mistrial**

The Michigan Court of Appeals denied petitioner's claim that he was entitled to a mistrial:

> Defendant next argues that the trial court abused its discretion in denying his motion for a mistrial based on comments made by the prosecution during its closing argument. We disagree. As this Court explained in *People v. Wolverton*, 227 Mich. App 72, 75; 574 NW2d 703 (1997), "[t]he grant or denial of a motion for a mistrial rests within the sound discretion of the trial court. An abuse of that discretion will be found only where the trial court's denial of the motion has deprived the defendant of a fair and impartial trial." *See also*, *People v. Griffin*, 235 Mich. App 27, 36; 597 NW2d 176 (1999). ("A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial," quoting *People v. Haywood*, 209 Mich. App 217, 228; 530 NW2d 497 (1995).)
>
> Before trial, defense counsel and the prosecution agreed that, while defendant did not have any convictions that could be used for impeachment under MRE 609, defendant's arrest on a federal weapons charge would necessarily come up at trial as it related to defendant's assertion that the charge provided a motive for defendant's niece to fabricate her testimony that defendant told her he murdered Galliard. Defendant's federal weapons charge did come up in the manner anticipated by counsel and, defendant does not complain that the weapons charge should not have been referred to in this manner. Rather, defendant challenges the prosecution's statement in its closing argument that the charge could be used to decide defendant's credibility, asserting that this comment was improper and that the trial court's refusal to grant him a mistrial on this basis denied him a fair trial. However, defendant mischaracterizes the prosecution's argument. Contrary to defendant's assertion, considered in context, the prosecution's comment did not invite the jury to consider that defendant had been arrested on a federal weapons charge as indicative of his credibility; rather, the prosecution suggested that the jury could consider the circumstances of that offense - that defendant purportedly lied to police, telling them that the gun found in his niece's car was hers and not his - as indicative of his credibility. Because the prosecution highlighted defendant's lie to police - not his arrest or the charge - the prosecutor's closing argument was not improper.

*People v. Nolan Hall,* No. 253627, slip op. at 3-4.

As an initial matter, petitioner is not entitled to federal habeas relief for the trial court's alleged violation of state law in denying his motion for a mistrial. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, treaties of the United

States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Petitioner cannot seek federal habeas relief

based upon his disagreement with the state appellate court's construction of state law. *See Pulley*

*v. Harris*, 465 U.S. 37, 41 (1984) ("[a] federal court may not issue a writ on the basis of a perceived

error of state law"). The United States Supreme Court "repeatedly has held that the state courts are

the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S.

684, 691 (1975). *See generally, Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) ("[b]ecause

state courts are the final authority on state law, federal courts must accept a state court's

interpretation of its statutes and its rules of practice") (internal citation omitted). Accordingly,

petitioner's claim regarding the trial court's denial of a motion for a mistrial should be denied.

### 2. Prosecutorial misconduct

The Michigan Court of Appeals denied petitioner's separate claim of prosecutorial

misconduct as follows:

> Further, to the extent that defendant frames the issue as one of prosecutorial misconduct, the prosecution's comments are to be examined in context, considered as a whole and evaluated in light of the defense arguments and the evidence admitted at trial, to determine whether they deprived defendant of a fair and impartial trial. *People v. Hill*, 257 Mich. App 126, 135; 667 NW2d 78 (2003); *People v. Rodriguez*, 251 Mich. App 10, 29-30; 650 NW2d 96 (2002). In the context of defendant's argument that the charge provided his niece with a motive to fabricate her testimony against him, and of the evidence admitted at trial, the argument of the prosecution that the circumstances surrounding the federal gun charge were relevant to defendant's credibility was proper. [FN1] Therefore, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

>> [FN1.] Given the evidence against defendant - including testimony from two family members and defendant's then-girlfriend that he told them that he had committed the instant murder - defendant would not be able to establish that the outcome of his trial was impacted by the prosecutor's comment even if we assumed that the prosecutor's closing argument were improper.

*People v. Nolan Hall,* No. 253627, slip op. at 4.

When addressing a claim of prosecutorial misconduct, the court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.* Nevertheless, even if the prosecutor's conduct was improper or even universally condemned, the court can provide federal habeas corpus relief only if the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted).

"When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). The court should consider four factors in determining whether a prosecutor's improper remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before

the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

The prosecutor presented this argument in the context of demonstrating petitioner's lack of credibility. The balance of the government's closing argument was as follows:

> Angela Hawkins got nothing. She got nothing in exchange for testifying against [petitioner] in federal court on those gun charges, the same gun charges, by the way, that you can use to decide the credibility of this individual right here -

> [Objection and comments by counsel judge omitted.]

> The same testimony on the same gun charges where [petitioner] tried to lay blame on Angela Hawkins. Again, life intertwined making an impact on another life.

> Angela Hawkins decided, you know what, I've kept this secret for this many years for you. From the time I was 12 years old, I have honored what you asked which was not to tell anybody, not to reveal what you told me, not to reveal what you showed me, and now you're going to tell the police that this was my gun in the car that I was driving, these were my items?

> No.

> Angela Hawkins did make the statement, you know what, I don't care about his ass. Well, Ladies and Gentlemen, again, an application of common sense and everyday life would tell you that that's certainly not out of the realm of possibility. Why should Angela Hawkins at that point in time care about dear Uncle Dino? He tried to stick her with a gun charge rather than accepting the responsibility himself.

Trial Trans. at 1213-14.

The prosecutor made these arguments in response to petitioner's testimony, in which petitioner: stated that he spent the night of March 6, 1982 with Galliard; that he was driving Galliard home in his mother's car; that Galliard was in such a hurry to get home that he flagged down a Cadillac; that Galliard left with the occupants of the vehicle (whom petitioner did not know); and that petitioner did not tell the three prosecution witnesses (i.e., Susan VanTrease, Angela Hawkins or Johnny Hawkins) that he killed Galliard. Trial Trans. VI at 1137-46.

Viewing the prosecutor's remarks in the context of the entire trial, the court concludes that the prosecutor did not engage in improper conduct. Petitioner's credibility was at issue. Three prosecution witness testified that petitioner admitting to committing the murder. Petitioner's defense was to deny that he made admissions to the prosecution witnesses and to present an alibi defense, i.e., Galliard left with a group of people in a Cadillac. The court cautioned the jury to consider petitioner's other improper acts solely in terms of evaluating his credibility. Trial Trans. VI at 1264. Under these circumstances, the prosecutor's comments were not improper, consisting of references to the record, highlighting inconsistencies or inadequacies of the defense, and asserting "reasonable inferences from the evidence." *Cristini*, 526 F.3d at 901.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### C.    Exclusion of evidence

Petitioner contends that the trial court violated his constitutional right to present a defense when it excluded hearsay testimony. The Michigan Court of Appeals addressed the issue as follows:

> Defendant also argues that he was denied his constitutional right to present a defense by the trial court's exclusion of hearsay testimony from a police officer regarding the statement given by the since-deceased cab driver who picked defendant up at his mother's house shortly after Galliard's murder. According to defendant, the police report pertaining to the cab driver's interview indicates that defendant told the cab driver that he had been out partying all night and that he was going over to his girlfriend's house to get some sleep. Defendant asserts that the cab driver's statement to police was "reliable enough" given that it supported the defense, and therefore, that the trial court abused its discretion in excluding testimony as to its content. We disagree.

The decision whether to admit evidence is discretionary with the trial court and this Court reviews such decisions for an abuse of discretion. *People v. Lukity*, 460 Mich. 484, 488; 596 NW2d 607 (1999); *People v. Starr*, 457 Mich. 490, 494; 577 NW2d 673, 675 (1998). An abuse of discretion occurs only when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, and the exercise of passion or bias. *People v. Hine*, 467 Mich. 242, 250; 650 NW2d 659 (2000). An error regarding the admission of evidence is not ground for reversal unless, after reviewing the entire record, it affirmatively appears that it is more probable than not that such error was outcome determinative. *Lukity*, *supra*, at 496.

MRE 801(c) defines hearsay as a declarant's out of court statement offered to prove the truth of the matter asserted. *People v. Tanner*, 222 Mich.App 626, 629; 564 NW2d 197 (1997). Hearsay is inadmissible as substantive evidence unless one of the enumerated hearsay exceptions applies. MRE 802. There is no dispute that the statement that the cab driver provided to police in 1982, which defendant wished to offer for the truth of its content, was hearsay. However, defendant asserts that given the driver's unavailability at the time of trial, the reliability of his statement and its alleged importance to defendant, it should have been admitted. Defendant does not direct this Court, and did not direct the trial court to any applicable exception permitting introduction of the driver's statement. Arguably, though, defendant suggests that the statement comes within MRE 803(24) and/or MRE 804(7), both of which provide for an exception to the hearsay rule of:

> [a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will be best served by admission of the statement into evidence.

"[C]ourts should consider the 'totality of the circumstances' surrounding each statement to determine whether equivalent guarantees of trustworthiness exist." *People v. Katt*, 468 Mich. 272, 291; 662 NW2d 12 (2003). Factors to be considered in evaluating the totality of the circumstances include (1) the spontaneity of the statement, (2) the consistency of the statement, (3) lack of motive to fabricate, (4) the reason the declarant cannot testify, (5) the voluntariness of the statement, (6) the declarant's personal knowledge of the matter on which he spoke, (7) to whom the statements were made, and (8) the time frame within which the statement was made. *People v. Lee*, 243 Mich. App 163, 178; 622 NW2d 71 (2000).

Defendant asserts that the statement bears sufficient indicia of reliability to be admissible because the driver was an unbiased witness giving a statement to a police officer near the time of the events in question and had no motive to lie. We agree that under the circumstances and in the time-frame it was given, the driver's statement bore sufficient indicia of trustworthiness. However, such merely addresses the threshold question presented by MRE 803(24) and 804(7); to establish admissibility, defendant also had to show that the statement was offered as evidence of a material point and was the best available evidence of that point. Defendant has not met this burden. Whether defendant had been out all night and was going to his girlfriend's house to sleep was not material to the determination whether he killed Galliard. Indeed, this information was consistent with both the prosecution's and defendant's theory of the case. Further, to the extent that the statement might have been offered to refute testimony that defendant was upset and agitated at his girlfriend's house, the statement was not the most probative evidence reasonably available on this point. Thus, the statement constituted inadmissible hearsay and the trial court did not abuse its discretion in excluding testimony regarding its content. [FN2]

> [FN2.] Again, even if this Court were to determine that the trial court abused its discretion in excluding the statement, reversal would not be warranted. Given the evidence presented against defendant, including the testimony of three witnesses that defendant admitted the instant offense to each on separate occasions, it cannot be said that it affirmatively appears that it is more probable than not that exclusion of the driver's statement to police was outcome determinative. *Lukity*, *supra*, at 496.

*People v. Nolan Hall,* No. 253627, slip op. at 4-5.

As an initial matter, this court will not address whether the trial court properly excluded the police officer's hearsay testimony regarding statements made by the deceased cab driver. The Michigan state courts are "the ultimate expositors of state law" in federal habeas proceedings. *Mullaney*, 421 U.S. at 691. It is not the province of this federal habeas court to reexamine the state court determination of a purely state law evidentiary issue. *See Estelle*, 502 U.S. at 67-68. Petitioner's claim does not raise a federal constitutional issue. Federal courts are reluctant to transform state evidentiary rulings into the type of constitutional claim asserted by petitioner:

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, including the right to present relevant evidence . . . subject to reasonable restrictions." *Varner v. Stovall*, 500 F.3d 491, 499 (6th Cir.2007) (citations and internal quotation marks omitted) (alterations in original). This court, however, has also stated that "[i]t is well settled that the Constitution does not guarantee a defendant the opportunity to present any evidence he desires." *Alley v. Bell*, 307 F.3d 380, 396 (6th Cir.2002). Indeed, "[o]nly if an evidentiary ruling is so egregious that it results in a denial of fundamental fairness [does] it . . . violate due process and thus warrant habeas relief." *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir.2004) (internal quotation marks omitted) (alterations in original). Issues of state law, however, are ordinarily not properly subjected to collateral review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

*Fleming v. Metrish*, 556 F.3d 520, 534 (6th Cir. 2009).

Here, the state court's evidentiary ruling was not so egregious as to deny petitioner a fundamentally fair trial. The exclusion of hearsay evidence is commonplace in both federal and state courts. There is nothing about petitioner's situation which transforms the application of this evidentiary rule into a federal constitutional issue. Furthermore, as the Michigan Court of Appeals observed, the cab driver's statement was consistent with both the prosecution's and the defense's theory of the case. Petitioner's claim of error should be denied.

### D.     Ineffective assistance of counsel

Finally, petitioner contends that his trial counsel was constitutionally ineffective for failure to call defense witnesses at trial and to interview defense witnesses. The Michigan Court of Appeals denied this claim as follows:

Defendant argues that he was denied the effective assistance of counsel by his counsel's failure to interview and call certain witnesses at trial[.] To prevail on this claim, defendant must show that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms, and that but for his counsel's errors, there is a reasonable probability that the results of his

trial would have been different and the resultant proceedings were fundamentally unfair or unreliable. *People v. Toma*, 462 Mich. 281, 302-303; 613 NW2d 694 (2000); *People v. Rodgers*, 248 Mich. App. 702, 714; 645 NW2d 294 (2001). To establish deficient performance, "defendant must overcome the strong presumption that his counsel's action constituted sound trial strategy under the circumstances." *Toma*, *supra* at 302. "This Court will not substitute its judgment for that of trial counsel regarding matters of trial strategy, even if that strategy backfired." *Rodgers*, *supra* at 715. Decisions as to what evidence to present and whether to call a particular witness are presumed to be matters of trial strategy and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *People v. Hoyt*, 185 Mich. App 531, 537-538; 462 NW2d 793 (1990). A substantial defense is one that might have made a difference in the outcome of the trial. *People v. Kelly*, 186 Mich. App 524, 526; 465 NW2d 569 (1990).

Defendant complains that his trial counsel did not interview potential defense witnesses or call witnesses that defendant wished to have testify on his behalf. However, defendant does not indicate what these witnesses would have testified to, nor how their testimony would have benefited his defense. Further, comments made by defendant during his sentencing make it clear that defense counsel was aware of at least one of the witnesses mentioned by defendant and advised defendant against calling that witness at trial. In the absence of more detail as to what testimony defendant's witnesses might have given, there is no basis for this Court to conclude that defense counsel was inappropriately prepared for trial or that his decision not to call additional witnesses was not sound trial strategy.

*People v. Nolan Hall,* No. 253627, slip op. at 6.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687 In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney

was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original).  Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-690.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.  For example, counsel has a duty to investigate all witnesses who may have information concerning his client's guilt or innocence.  *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.

Petitioner's appellate brief lists three defense witnesses who, according to petitioner, were supposed to be called at trial: Valiant Randall; Roger Duane Williams; and Ricky Howlett. Supplemental Brief at. 1. Docket no. 30.  Petitioner stated that this issue was preserved at sentencing when he "read a notarized letter he directly handed to his attorney and wrote his attorney."  *Id.* While petitioner referred to the letter attached to his supplemental brief, the Michigan Court of Appeals Transcript does not include such a letter.  *Id.*  The record reflects that petitioner made a statement at his sentencing, which referred only to one of these witnesses, Roger Duane Williams, whom petitioner stated "was also in the car that night."  Sent. Trans. at 7-8.  While petitioner claims that his attorney was ineffective, he does not mention (let alone demonstrate) the substance of each potential witness' testimony and how that testimony would have benefitted the defense.  An unsupported allegation of ineffective assistance of counsel fails to overcome the "strong

23

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. *See Fountain v. United States*, 211 F.3d 429, 435 (7th Cir. 2000); *United States v. DiTommaso*, 817 F.2d 201, 215 (2nd Cir. 1987); *Campbell v. Greene*, 440 F. Supp.2d 125, 149 (N.D.N.Y. 2006).

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## V. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: January 19, 2010            /s/ Hugh W. Brenneman, Jr.
                                      HUGH W. BRENNEMAN, JR.
                                      United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).